In the Matter of SAMUEL CHAPMAN, INC., Bankrupt.

No. 64–B–39.

United States District Court
S. D. New York.

June 30, 1967.

Robt. M. Morgenthau, U. S. Atty. for Southern Dist. of N. Y., for the United States; Ezra H. Friedman, Asst. U. S. Atty., of counsel.

Hahn, Hessen, Margolis & Ryan, New York City, for trustee respondent; Marks F. Paskes, New York City, of counsel.

## MEMORANDUM

FRANKEL, District Judge.

This is a rare case, presenting, as Referee Herzog said, a "pure" question of law. The question, for which the particular facts are unimportant, is this:

> Is an estate in liquidating bankruptcy liable for federal tax penalties incurred by the debtor-in-possession during a superseded Chapter XI proceeding?

Affirming the referee's decision, the court concludes that the estate is not liable for such penalties.

The perimeters of the problem and main guides to decision, none of which yields a definitive answer, may be outlined as follows:

Section 57(j) of the Bankruptcy Act, 11 U.S.C. § 93(j), governing the proof and allowance of claims, provides:

"Debts owing to the United States or to any State or any subdivision thereof as a penalty or forfeiture shall not be allowed, except for the amount of the pecuniary loss sustained by the act, transaction, or proceeding out of which the penalty or forfeiture arose, with reasonable and actual costs occasioned thereby and such interest as may have accrued on the amount of such loss according to law."

It is common ground that the effect of the section is to erase only pre-bankruptcy penalties, Boteler v. Ingels, 308 U.S. 57, 60 S.Ct. 29, 84 L.Ed. 78 (1939), and it would appear to have this effect following commencement of a Chapter XI as well as a liquidating bankruptcy proceeding. It is likewise undisputed—though the scope of this proposition may be uncertain since Nicholas v. United States, 384 U.S. 678, 694–695, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966)—that an estate in liquidating bankruptcy is liable under Boteler for penalties incurred by the trustee during the period of his functioning.

Relying upon the concept, as expressed in Nicholas, that there is a "continuity of interest between the debtor in possession and the trustee as officers of the bankruptcy court" (384 U.S. at 693 n. 27, 86 S.Ct. at 1685), the Government argues that Boteler should be deemed controlling here. But the Supreme Court has refrained from joining in that view,[1] and this court—focusing upon the rationale of Boteler, the teachings of Nicholas, and the pertinent policy of Section 57(j)—arrives at a contrary answer to this undoubtedly close question.

The Court in Nicholas, while it spoke of a "continuum," made clear that the flow of responsibilities and liabilities is not an uninterrupted one. In an analysis germane here, it divided the pertinent history "into three periods—the pre-arrangement period, the arrangement period, and the liquidating bankruptcy period." 384 U.S. at 686, 86 S.Ct. at 1681. The Court held that interest on taxes incurred during either of the first two periods accrues until the end of that period, but not beyond it. And it followed Boteler in exacting penalties from the estate for delinquencies of the trustee during the third period. In some persuasive measure, the rationale of Nicholas, including the reaffirmation of a central ground for decision in Boteler, points toward a result favoring the trustee in this case.

Explaining its conclusion that a trustee should not be immune from penalties for his tax defaults, the Court in Boteler pointed out that a contrary holding would strip from taxing authorities "the traditional and almost universal method of enforcing prompt payment." 308 U.S. at 61, 60 S.Ct. at 32. In Nicholas, that point was stated as a central ground for reaffirming the Boteler rule. Quoting the foregoing language from Boteler (384 U.S. at 692, 86 S.Ct. at 1684), the Court stressed again that for the trustee's violation the Government was "entitled to exact the penalties * * * as a legitimate means to enforce the prompt filing of the tax returns." Id. at 694, 86 S.Ct. at 1685. It described the result in Boteler as one where "the trustee was penalized for *his* failure" (ibid., emphasis added) to perform his duty under the tax laws. And it concluded that a similar result should follow from "the trustee's failure to file timely returns" in the case before it. Id at 695, 86 S.Ct. at 1685.

Three thoughts affecting the present problem emerge from reflection upon that analysis:

(1) Penalties serve as deterrents or as "encouragements" to compliance. To exact them from the person or entity responsible during any of the three

1. The question in the instant case was expressly reserved in Nicholas, 384 U.S. at 694 n. 28, 86 S.Ct. 1674.

periods supports "the traditional and almost universal" scheme of enforcement.

(2) No similar result is achieved by collecting penalties from the trustee for delinquencies committed by his predecessor in the Chapter XI period. In this respect, at least, the policy of § 57(j) is as potent with respect to that second period as it is for the first, pre-arrangement period.

(3) Absolving the trustee from penalties incurred by him creates an open-ended period of uncertain duration during which the coercive threat of such exactions is wholly suspended. No similar disarming of the taxing power results from confining the collectibility of penalties to the particular period in which they are incurred. The sanction of potential penalties is present and available at all times, throughout each of the three periods.

These premises do not lead mathematically or inexorably to a conclusion in this case. What they do show is that the judgment of policy underlying *Boteler* becomes severely weakened and diluted when the Government seeks its application to the different problem here. On the other hand, the fundamental and pervasive policy reflected in Section 57(j), which three Justices would have held sufficient to deny the penalties in *Nicholas* (dissent of White, J., in which Douglas and Fortas, JJ., joined, 384 U.S. at 696 et seq., 86 S.Ct. at 1686 et seq.), is correspondingly strengthened in its impact upon this case. That unquestioned policy—that "[t]he bankruptcy laws do not favor saddling an estate with penalties" (id. at 697, 86 S.Ct. at 1686)—would seem, therefore, to merit decisive weight for present purposes.

A brief comment is perhaps appropriate on the Government's suggestion that "[a]llowance of the penalties asserted herein will have the salutary effect of stimulating creditors' committees to actively supervise the debtor-in-possession's operations." [2] The point may not be weightless, but it is in the end a small one. It assumes, without documentation, a measure of supervisory control by creditors which is scarcely to be taken as a standard and routine reality. It overlooks, moreover, the large arsenal at the Government's disposal for protecting and enforcing its own interests during an arrangement proceeding. In short, it is not a factor of sufficient moment to overbalance the policy restricting the exaction of penalties at the expense of creditors.

The referee's order is confirmed. So ordered.

2. Memorandum in Support of Petition for Review, p. 16.