Daniel W. **STEPHENS** and Glenn A. Chesney, Claimants–Appellants,

v.

Daniel J. **COLAIANNIA,** Special Deputy Commissioner on Insurance, Appellee.

No. 96CA0541.

Colorado Court of Appeals, Div. III.

July 10, 1997.

Bennington Johnson Ruttum & Reeve, Kenneth R. Bennington, Denver, for Claimant–Appellant Daniel W. Stephens.

Iverson, Amman & Wood, B.G. Iverson, Monroe, LA, for Claimant–Appellant Glenn A. Chesney

Frank & Finger, P.C., Thomas Frank, Terrence P. Murray, Evergreen, for Appellee.

Opinion by Judge JONES.

In this receivership action, claimants, Daniel W. Stephens and Glen A. Chesney, appeal the judgment of the trial court against them and in favor of the receiver for Western Preferred Casualty Company (Western), an insolvent insurance company domiciled in Colorado. We affirm.

In July 1983, claimants suffered personal injuries while working with a crane owned by a Louisiana company insured by Western. They each filed suit against that company. In December 1985, each claimant obtained a separate judgment in the amount of $166,250, plus costs, with the company owning the crane adjudged as 60% at fault for the respective injuries of the claimants.

On April 16, 1986, the Denver District Court entered an order of liquidation, a finding of insolvency, and an order appointing a receiver, all of which were pursuant to the commencement of a receivership proceeding as to Western. In November 1986, each claimant filed a separate proof of claim with the receiver for $231,268, plus interest at 12 percent. Each of their claims was allowed in the amount of $105,000, respectively. The claimants then protested their claim allowances with the receiver.

After a series of negotiations between the receiver and the claimants, the receiver offered, on October 16, 1992, to settle with Stephens for $210,693, and with Chesney for $210,812, the figures representing the amount of the respective original judgments ($166,250), plus interest at 12% from March 14, 1984 (the date on which the underlying suit was filed), to April 16, 1986 (the date Western was declared insolvent), plus costs of the underlying suit, amounting to $2,881 for Stephens and $3,064 for Chesney. Claimants were further advised that the receiver had been authorized, should claimants accept the settlement, immediately to pay them 85 percent of the settlement figures, amounting to $179,089 for Stephens and $179,190 for Chesney.

On the same date, claimants accepted the receiver's offers, but reserved their rights to participate in any payment of post-insolvency-filing interest to be made by the receiver. Thereafter, the receiver forwarded checks to the respective claimants in the aforementioned amounts, which checks were negotiated.

In September 1993, the receiver informed the claimants that their reservations of rights to post-insolvency-filing interest were unacceptable. Claimants were informed that, therefore, the 85% authorized distribution of receivership funds, which only applied to fully settled claims, could not be considered final and that the claims of each had been downgraded to the "protest category." The receiver indicated that a court hearing would be necessary should claimants continue to pursue their "reservations."

On approximately October 5, 1994, each claimant received from the Louisiana Insurance Guaranty Association (LIGA) a payment of $89,406, which represented LIGA's statutory limit of $49,900, plus interest at 12% per annum from the date of demand against LIGA in the amount of $39,506.

After these payments, Stephens had received a total of $268,495 and Chesney had received $268,596 in combined payments from the receiver and LIGA.

Thereafter, the receiver requested a hearing concerning disputes that remained as to whether claimants were entitled to more funds and whether, to the extent that the receiver was required to reimburse LIGA for its payments to claimants, the claimants had been overpaid and should reimburse the receiver for the overpayment. After a full hearing on these matters, the trial court found for the receiver and against the re-

spective claimants, finding that LIGA had a legitimate subrogation claim against the receiver and that the payments by LIGA to claimants must be offset against amounts paid to the claimants by the receiver, that the claimants had received overpayments through the combined payments of the receiver and LIGA, which overpayments must be reimbursed to the receiver, and that the claimants were not entitled to post-insolvency-filing interest.

In appealing that judgment, the claimants generally contend that they are entitled to interest that has accrued on the amounts due to them from the receiver from and after the commencement of the receivership proceeding. Thus, they claim, they have not been overpaid and do not owe a reimbursement to the receiver. They also contend that the receiver is not required to reimburse LIGA for its payments to the claimants.

I.

Claimants' contend that the trial court erred in ruling that they were not due post-insolvency-filing interest. We find no error.

■ The right to interest, absent an agreement to pay it, is statutory. *I.M.A., Inc. v. Rocky Mountain Airways, Inc.,* 713 P.2d 882 (Colo.1986).

■ The general rule under federal law, in bankruptcy and equitable receivership, which serves as a useful guide here, is that interest on a debtor's obligations ceases to accrue at the beginning of proceedings. *Vanston Bondholders Protective Committee v. Green,* 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946). *See Nicholas v. U.S.,* 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966); *Thomas v. Western Car Co.,* 149 U.S. 95, 13 S.Ct. 824, 37 L.Ed. 663 (1893) (in general, after property of an insolvent passes into the hands of an receiver or of an assignee in insolvency, interest is not allowed on the claims against funds).

■ Here, the trial court concluded that the interest was not due because:

(1) there was not a 'meeting of the minds' regarding the reservation of the 'post-filing interest' provision, inserted by the Claimants into the settlement agreement, between the Claimants and the Receiver; (2) the Receiver has not allowed post-filing interest to any other claimants and there is no reason to treat these Claimants preferentially; and (3) awarding Claimants post-filing interest is impractical for the Receivership, which needs to know a fixed amount for each claim to determine what can be distributed to claimants.

We conclude that the trial court properly upheld the receiver's refusal to pay the interest.

First, there was no agreement between the parties for actual payment of the interest. The settlement agreement merely reserved the claimants' right to claim their *pro rata* share if the receiver determined such interest should be paid. The receiver did not agree to pay it.

Also, there is no statute which provided, at the pertinent times, for the payment of post-insolvency-filing interest. Because the right to interest, absent an agreement to pay it, is statutory, *see I.M.A., Inc. v. Rocky Mountain Airways, Inc., supra,* the receiver lacked authority to pay post-insolvency-filing interest.

We find further support for the equity arguments of the receiver, adopted by the trial court, that he had not paid such interest to other claimants, that he had no reason to treat the claimants' claims preferentially, and that the practical realities of the receivership proceeding precluded the award of such interest. Preferential payment of post-insolvency interest to the claimants would have violated the legislative purpose of establishing a system for equitable and orderly liquidation of domiciliary insurance companies. *See Skandia America Reinsurance Corp. v. Barnes,* 458 F.Supp. 13 (D.Colo.1978).

Finally, payment of the interest sought here by claimants could be construed as a penalty to other creditors, and, as such, not in harmony with the intent and policy of the General Assembly to provide an equitable and orderly liquidation. *See also Resolution Trust Corp. v. Shipley,* 809 P.2d 1073 (Colo. App.1990).

## II.

Claimants also contend that the trial court erred in concluding that the receiver is obligated to reimburse LIGA for all amounts it paid to them. We do not agree.

Claimants concede that, generally, LIGA would have subrogation rights against a receiver of an insolvent insurer and that the receiver would be obligated to reimburse LIGA to some extent. They argue, however, that under these circumstances, LIGA does not have subrogation rights. We affirm the trial court.

### A.

■ Insolvency proceedings in Colorado and in Louisiana at the time pertinent here were governed by the then extant Uniform Insurers Liquidation Act (UILA), relating to the liquidation of insurance companies. Its purpose was to centralize insurance rehabilitation and liquidation proceedings in the courts of a single state so as to protect equally the creditors, in any other state, of any insolvent insurer. *See Herstam v. Board of Directors,* 895 P.2d 1131 (Colo.App. 1995); *Skandia America Reinsurance Corp. v. Barnes, supra;* Colo. Sess. Laws 1955, ch. 172, § 72–18–1, et seq.

Concerning the UILA, Colorado and Louisiana are "reciprocal" states under their respective statutory schemes, and each recognizes and defers to the actions of the courts of the other state to insure the equitable distribution of the insolvent insurer's limited assets to all of the creditors of the insurer.

The claimants here were, at all pertinent times, residents of Louisiana, while Western was domiciled in Colorado. Thus, relevant portions of UILA in Louisiana governed claimants' claims against Western, as follows:

> In a delinquency proceeding in a reciprocal state against an insurer domiciled in that state, claimants, against such insurer, who reside within this state may file claims either with the ancillary receiver, if any, appointed in this state, or with domiciliary receiver. All such claims must be filed on or before the last date fixed for the filing

of claims in the domiciliary delinquency proceeding.

La.Rev.Stat. Ann. § 22:760(A) (West 1986).

In Colorado, as regards the claims, the statutes provided for the filing of claims with the insurer's receiver in Colorado, as follows:

> In a delinquency proceeding begun in this state against an insurer domiciled in this state, claimants residing in reciprocal states may file claims either with the ancillary receivers, if any, in their respective states or with the domiciliary receiver. All such claims shall be filed on or before the last date fixed for the filing of claims in the domiciliary delinquency proceedings.

Colo. Sess. Laws 1955, ch. 172, § 72–18–2(1) at 469 (now codified generally as § 10–3–501, et seq., C.R.S. (1994 Repl.Vol. 4A)).

Pursuant to statutory requirements, the claimants filed claims with Western's receiver and with LIGA in Louisiana. Under the provisions of the Louisiana statutes, LIGA, by virtue of its payments of $89,406 to claimants became subrogated to claimants' rights of recovery from Western's receiver to the extent of such payments. The relevant statute provides as follows concerning the effect of claims paid by LIGA:

> (1) Any person recovering under this Part shall be deemed to have assigned his rights under the policy to the association to the extent of his recovery from the association. Every insured or claimant seeking the protection of this Part shall cooperate with the association to the same extent as such person would have been required to cooperate with the insolvent insurer.

> (2) The receiver, liquidator or statutory successor of an insolvent insurer shall be bound by settlements of covered claims by the association or a similar organization in another state. The court having jurisdiction shall grant such claims priority equal to that which the claimant would have been entitled in the absence of this Part against the assets of the insolvent insurer. The expenses of the association or similar organization in handling claims shall be accord-

ed the same priority as the liquidator's expenses.

La.Rev.Stat. Ann. § 22:1385 (West 1986).

The Colorado statutes in effect at the time were virtually identical and, in pertinent part, provided:

(1) Any person recovering under this part 5 from the association shall be deemed to have assigned his rights under the policy to the association to the extent of his recovery from the association. Every insured or claimant seeking the protection of this part 5 shall cooperate with the association to the same extent as such person would have been required to cooperate with the insolvent insurer.

Colo. Sess. Laws 1971, ch. 205, § 72–34–11(1) at 761.

(2) The receiver, liquidator, or statutory successor of an insolvent insurer shall be bound by settlements of covered claims by the association or a similar organization in another state. The court having jurisdiction shall grant such claims priority equal to that which the claimant would have been entitled in the absence of this part 5 against the assets of the insolvent insurer. The expenses of the association or a similar organization in handling claims shall be accorded the same priority as the liquidator's expenses.

Colo. Sess. Laws 1977, ch. 103, § 10–4–511(2) at 514. These two statutory provisions were later codified with amendments at § 10–4–511, C.R.S. (1994 Repl.Vol. 4A).

Thus, under the law of both states involved here, LIGA's settlement of the claimants' claims and payments to them entitled it to subrogation rights of those claimants. The receiver, thus, became bound to recognize and address those rights, and LIGA itself became a claimant in the Western receivership. *See Colaiannia v. Aspen Indemnity Corp.*, 885 P.2d 337 (Colo.App.1994).

■ Our view that LIGA has gained a position as a claimant, pursuant to the claims of the claimants, in the receivership proceeding is buttressed by the General Assembly's establishment of the priority of the various claims cognizable against a receiver, and reference to insurance guaranty associations,

such as LIGA, therein. The various pertinent statutes provided priorities as follows:

(1) In a delinquency proceeding against an insurer domiciled in this state, claims owing to residents of ancillary states shall be preferred claims if like claims are preferred under the laws of this state. All such claims, whether owing to residents or nonresidents, shall be given equal priority of payment from general assets regardless of where such assets are located.

(2) In a delinquency proceeding against an insurer domiciled in a reciprocal state, claims owing to residents of this state shall be preferred if like claims are preferred by the laws of that state.

Colo. Sess. Laws 1955, ch. 172, § 72–18–6 at 473.

(3) In a delinquency proceeding against an insurer for which a receiver has been appointed in this state, the priorities of distribution of general assets shall be as follows:

(a) The administration expenses of the receiver;

(b) Wages and commissions actually owing to employees for services rendered within three months prior to the date of the filing of the delinquency petition, not exceeding one thousand five hundred dollars to each employee, and secured claims, including claims for taxes and debts due the federal and any state or local government, which are secured by liens perfected prior to the commencement of the delinquency proceedings; (c) Claims by policyholders, beneficiaries, and insureds, liability claims against insured covered under insurance policies and insurance contracts issued by the company, and claims of the Colorado insurance guaranty association *and any similar organization in another state;*

(d) All other claims not falling within any other priority under this section. (emphasis added)

Colo. Sess Laws 1977, ch. 100, § 10–3–507 at 507. These statutes are now codified at § 10–3–507, C.R.S. (1994 Repl.Vol. 4A).

Because LIGA is a "similar organization in another state" to the Colorado Insurance

Guaranty Association, it is specifically provided with status equal to that of Western's policyholders, beneficiaries, and insureds. And, the statute specifically provides that LIGA's claims must be given "equal priority of payment" from Western's general assets.

Thus, the trial court did not err in determining that the receiver must consider and pay the claim from LIGA.

### B.

■ Claimants further argue that, if LIGA's claim must be considered by the receiver, the trial court erred in determining the amount of that claim. We disagree.

LIGA allowed each respective claimant to recover the Louisiana statutory maximum of $49,900. Additionally, pursuant to Louisiana law, claimants were awarded interest on their claim allowance at 12 percent per annum from the date of their demand against LIGA, October 13, 1986, through the date of LIGA's payment to them, September 30, 1994. *See Aramburo v. Travelers Insurance Co.*, 438 So.2d 274 (La.App.1983)(claims under LIGA entitled to interest if from $100 to less than $50,000 even if total amount paid exceeds statutory cap).

The interest each claimant received was $39,506 for a total award of $89,406, respectively.

The trial court here found and concluded that to the extent that LIGA's payment to each claimant of $49,900 represented a liability that ultimately was the responsibility of the receiver to pay, by virtue of LIGA's subrogated rights from the claimants, that amount had to be offset against those amounts paid directly to the respective claimants by the receiver. The court reasoned that, under the pertinent statute, to allow no offset would mean that claimants would receive a greater *pro rata* recovery on their claims than others in the same class of claimants. *See* Colo. Sess. Laws 1977, ch. 100, § 10–3–507(3)(c) at 507.

We note here that the trial court, in its order, calculated the amount of the judgment based on 100 percent recovery by the claimants of the approximately $210,000 that they and the receiver stipulated was the amount

representing their original Louisiana judgment, plus appropriate interest. While full recovery for the claimants is not reflected in the record that was certified to this court, because none of the parties contested the trial court's presumption, which would necessarily mean that all claimants in the same class as those here were allowed full recovery of their claims against the receiver, we will accept the 100 percent claim allowance here as appropriate, in spite of the earlier settlement for an 85 percent claim allowance to these claimants.

■ We note further that, while the trial court determined that LIGA's payment of $49,900 to the respective claimants, for purposes of any offset, should not be considered as a part of what was due to be paid by the receiver to the claimants, the trial court found that the interest amounting to $39,506 that LIGA was compelled by Louisiana law to pay to each claimant on the $49,900 was appropriate to be calculated into the total amount paid to the claimants. We agree with the trial court's reasoning that, because Louisiana requires payment of post-insolvency-filing interest by LIGA, the interest was an amount due to the claimants as a part of their claims. Notably, on appeal, the receiver has not taken issue with the trial court on this part of its calculation.

The trial court then proceeded to calculate the amount due to the claimants, minus, of course, the $49,900 as to each claimant that will be reimbursed to LIGA. At 100 percent payment of claims, Stephens was found to be owed $250,199 ($210,693 + $39,506), and Chesney $250,318 ($210,812 + $39,506). Thus, Stephens, who had received a total of $268,495 from the receiver and LIGA, was overpaid by $18,296. Chesney, who had received a total of $268,596, was overpaid by $18,278. The claimants were ordered to reimburse the receiver in the respective amounts of the overpayments.

We conclude that the record supports the method by which the trial court calculated the setoff amounts and that the determination of the overpayment amounts is rationally related to legitimate purposes imposed on

the receiver of fairly paying all appropriate claims on an equal basis by class.

Accordingly, the judgment of the district court is affirmed.

PLANK and RULAND, JJ., concur.