346 F.2d 839
 120 U.S.App.D.C. 358
 NATIONAL ASSOCIATION OF BROAD-CAST EMPLOYEES AND
TECHNICIANS, AFL-CIO, Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee, Wrather
Corporation, WPIX, Inc., Intervenors.
 No. 18849.
 United States Court of Appeals District of Columbia Circuit.
 Argued Jan. 6, 1965.
Decided May 13, 1965.
 
 Mr. Warren Woods, Washington, D.C., with whom Mr. Jon F. Hollengreen, Washington, D.C., was on the brief, for appellant.
 Mr. John H. Conlin, Counsel, Federal Communications Commission, with whom Messrs. Henry Geller, General Counsel, Daniel R. Ohlbaum, Deputy General Counsel, and Howard Jay Braun, Counsel, Federal Communications Commission, were on the brief, for appellee.
 Mr. Thomas H. Wall, Washington, D.C., with whom Messrs. John B. Jacob and Alfred C. Cordon, Jr., Washington, D.C., were on the brief, for intervenor, Wrather Corporation.
 Mr. Percy H. Russell, Jr., Washington, D.C., with whom Messrs. Aloysius B. McCabe and Erwin G. Krasnow, Washington, D.C., were on the brief, for intervenor, WPIX, Inc.
 Before DANAHER, BURGER and McGOWAN, Circuit Judges.
 BURGER, Circuit Judge:
 
 
 1
 This is an appeal from an order of the Federal Communications Commission granting an application for assignment of the license of New York City metropolitan area radio station WBFM, owned by Wrather Corporation, to WPIX, Inc., the licensee of television station WPIX in New York, and denying appellant National Association of Broadcast Employees and Technicians' (NABET's) petition to deny the application or in the alternative to designate it for hearing.
 
 
 2
 The transfer agreement provided that WPIX was not required to take on any of the employees of WBFM. NABET was the certified collective bargaining agent representing half a dozen of WBFM's technical employees. In response to a NABET request to know whether WPIX would continue to recognize NABET as bargaining agent by accepting the existing collective agreement between it and Wrather, WPIX said that the sale was one for physical properties only and included no transfer of personnel and, further, that WPIX probably would not need more technical personnel in the immediate future but might be willing to consider the NABET members should a subsequent need arise. WPIX has collective bargaining agreements with six different unions, one of which agreements purports to cover all 'radio broadcast' employees. The refusal of WPIX to 'do business' with NABET rests primarily on the possibility of jurisdictional strife between IBEW, the union party to its existing bargaining agreement, and NABET.
 
 
 3
 Appellant contends that the Commission was required to hold an evidentiary hearing to develop the public-interest ramifications of the proposed transfer growing out of NABET's interests as bargaining agent. Its argument here, as at the Commission, is two-fold: (1) that the Commission must consider the economic injury to the six employees in determining what the public interest requires; (2) that WPIX's refusal to recognize NABET's bargaining rights contravenes national labor policy and therefore is prima facie against the public interest.[1]
 
 
 4
 NABET's first contention is, on this record, founded upon a bare allegation that the transfer of the license will have an adverse economic impact on six employees of the assignor. We do not believe that this allegation, without more, compelled the Commmission to inquire further into the matter by hearing. But we do not hold that the Commission lacks power to take labor relations matters into account as one of the factors in the totality of considerations in passing upon a license assignment application. If further allegations connect the impact on the employees with at least potentially substantial adverse effects upon the service being supplied the public by the licensed activity, we assume the Commission may protect that broader interest, of which it is the duly constituted guardian, by conditioning its consent in such manner as is likely to protect the public interest. But the Commission's concern is focused always upon the service and, in the absence of explicit provision by Congress for the prescription by the Commission of economic benefits for those with no continuing role to play in the furnishing of the service, an allegation limited to this kind of injury does not require inquiry and consideration by the Commission.
 
 
 5
 Nor does the allegation that WPIX's refusal to become a party to the collective agreement between Wrather and NABET contravenes national labor policy require a hearing. As the Commission's opinion notes, 'WPIX Inc.'s pleading contains uncontroverted representations concerning the existence of its present collective bargaining agreements and its intentions not to deny union representation to any future employees of WBFM.' NABET's principal reliance in urging a contrary finding is placed upon John Wiley & Sons v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). That case involved the narrow question whether a surviving nonunionized corporation is bound to arbitrate employee grievances under the procedure set up by a collective agreement between the merged corporation and a union. Here, in contrast, there is no claim made concerning the existence of a compulsory arbitration procedure in the agreement between Wrather and NABET or what bearing such a procedure might have in the present context. The transfer approved by the Commission was a transfer of physical assets and operating authority; it did not include personnel; in Wiley the controversy was triggered by the wholesale movement of personnel pursuant to the plan of the merger. Here the 'new employer' already has an agreement with a rival union which embraces the jobs in dispute; in Wiley the Court expressly noted that it was not dealing with such a situation. See 376 U.S. at 551-552, n. 5, 84 S.Ct. 909. It is thus apparent that the Wiley case does not afford a basis for NABET's claim that a hearing was required to consider the alleged disregard of national labor policy.
 
 
 6
 Affirmed.
 
 
 
 [1]
 NABET understandably has not relied on threats of jurisdictional strife in order to compel a hearing. The Commission was not unaware of the possibility of such strife here but we do not think that possibility or its impact on the public interest-- the listening public-- requires that the Commission grant a hearing. In argument the court was advised that the New York metropolitan area has 42 FM and 36 AM stations and that there is nothing especially distinctive about the programming WPIX proposes for WBFM. Even if we were to assume that WBFM might temporarily go 'off the air' because of labor strife, the other facilities available to serve the public indicate the silence of WBFM would not be critical. Hence the Commission was not required to hold a hearing to consider whether such strife would come about. We might have another case if, for example, we were confronted with a possibility that labor strife flowing from legitimate bargaining interests would extinguish the only source of weather reports to some remote area not served by other outlets