CHM COMPANY (DISSOLVED) BY RICHARD A. McDOUGAL, ERMA E. McDOUGAL, O.A. CHURCH, MARIE M. HULL AND DAVID W. DRESNICK, DIRECTORS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1691–74.   Filed April 11, 1977.

*Malcolm S. Weintraub* and *Anthony R. Giannoni*, for the petitioner.

*Edward B. Simpson*, for the respondent.

WILBUR, *Judge:* Respondent has determined the following deficiencies in petitioner's Federal income tax:

| TYE Mar. 31— | Deficiency |
| --- | --- |
| 1969 | $68,743 |
| 1970 | 30,328 |
| 1971 | 38,757 |

The issue for decision is whether petitioner's status as an electing corporation under subchapter S of the Code was terminated by the filing of petitions under chapter XI or XII of the Bankruptcy Act by some of its shareholders.

### FINDINGS OF FACT

All of the facts have been stipulated and are found accordingly.

Petitioner CHM Co. (CHM) was incorporated under the laws of California on July 31, 1961, and was dissolved under the laws of California in 1972. Prior to dissolution, the principal office of CHM was in Walnut Creek, Contra Costa County, Calif. The petition herein was filed by CHM directors authorized to act on behalf of CHM.

During all relevant periods, CHM reported for Federal income tax purposes on a fiscal year basis ending March 31.

On or about August 23, 1961, CHM filed an election under section 1372 of subchapter S of the Internal Revenue Code of 1954 for its fiscal year ending March 31, 1962, and the shareholders filed their consents thereto. CHM filed its Federal income tax returns for the periods involved with the Internal Revenue Service Center in Ogden, Utah.

CHM was authorized to issue only one class of stock. Its authorized capital was an aggregate par value of $1 million comprised of 100,000 shares at $10 per share. The company made an initial issuance of stock on August 15, 1961, as follows:

| Certificate No. | Name of shareholder | Number of shares |
|---|---|---|
| 1 | M. W. Hull | 30 |
| 2 | J. E. Harbinson | 30 |
| 3 | Harvey A. McDougal | 10 |
| 4 | O. A. Church | 10 |
| 5 | Richard A. McDougal | 10 |

On July 22, 1963, Manuel Wilson Hull, also known as M. W. Hull, a CHM shareholder, and his wife, Marie M. Hull, filed with the United States District Court for the Northern District of California a voluntary petition in proceedings under chapter XI of the Bankruptcy Act. The 30 shares of CHM stock owned by M. W. Hull were listed as an asset of M. W. Hull in schedules attached to and made a part of the petition, which schedules set forth petitioner's assets and liabilities. Upon filing the petition, M. W. Hull became a debtor in possession. The chapter XI proceeding was still in progress as of the date of filing of the stipulation of facts in this matter.

Raymond S. Torkelson, an attorney at law in Sacramento, Calif., was appointed the receiver in the Hull proceeding on December 30, 1963. The order of the Court states in pertinent part:

The motions of L.E. Weisenberg, Jr. and Oliver Kullberg for an order to modify stay order and to require the posting of bond and the appointment of a receiver having come on for hearing before the Honorable Evan J. Hughes, Referee in Bankruptcy, and the Referee being fully advised it is ordered:

(1) That Raymond Torkelson, Esquire, be and hereby is, appointed Receiver of the property of the debtors herein, including but not limited to

the premises known as the Bret Harte Inn, Grass Valley, California, the furniture, fixtures and inventory therein; the stock of CHM Corporation, a California corporation, belonging to the debtors * * *

On December 9, 1969, James Eugene Harbinson, also known as J. E. Harbinson, filed with the United States District Court for the Northern District of California a voluntary petition in proceedings under chapter XII of the Bankruptcy Act. The 30 shares of CHM stock owned by J. E. Harbinson were listed as an asset of J. E. Harbinson in schedules attached to and made a part of the petition, which schedules set forth petitioner's assets and liabilities. Upon filing the petition, J. E. Harbinson became a debtor in possession. No trustee or receiver was ever appointed. The chapter XII proceeding was closed in 1972.

CHM held stockholder meetings and directors meetings. Corporate records for the period 1961 through 1971 reflect that M. W. Hull attended stockholder meetings and voted the CHM stock until his death on February 15, 1966, and his wife, Marie M. Hull, as administratrix of M. W. Hull's estate, attended such meetings thereafter and voted the CHM stock. After his appointment as receiver, Torkelson had knowledge of such meetings and permitted the Hulls to attend such meetings and vote the stock. CHM stock certificates with respect to the 30 shares of stock owned by M. W. Hull were endorsed to Torkelson in 1972 but were not endorsed to him at any prior time.

### OPINION

Section 1371(a)[1] provides in part that the term "small business corporation" means a corporation which does not have as a shareholder a person other than an individual or an estate.[2] An election under subchapter S terminates when the

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.

[2] SEC. 1371. DEFINITIONS.

(a) SMALL BUSINESS CORPORATION.—For purposes of this subchapter, the term "small business corporation" means a domestic corporation which is not a member of an affiliated group (as defined in section 1504) and which does not—
  (1) have more than 10 shareholders;
  (2) have as a shareholder a person (other than an estate) who is not an individual;
  (3) have a nonresident alien as a shareholder; and
  (4) have more than one class of stock.

corporation ceases to be a small business corporation as defined in section 1371(a). Sec. 1372(e).

Respondent contends that the filings by M. W. Hull and J. E. Harbinson under chapters XI and XII of the Bankruptcy Act created entities separate and apart from the debtor, i.e., estates in bankruptcy.[3] Respondent further contends that an estate in bankruptcy is not an individual or estate within the meaning of section 1371(a) and that the existence of the nonqualified shareholders resulted in the termination of CHM's subchapter S status.

We shall first turn our attention to the question whether, for purposes of subchapter S, an entity separate and apart from the shareholder is created when a shareholder files a chapter XI or chapter XII petition.

We begin with section 1.641(b)–2(b), Income Tax Regs., which provides:

The estate of an infant, incompetent, or other person under a disability, or *in general,* of *an individual* or corporation *in receivership* or a corporation in bankruptcy is not a taxable entity separate from the person for whom the fiduciary is acting, in that respect different from the estate of a deceased person or of a trust. * * * [Emphasis added.]

In view of the plain language of this regulation and its historical genesis[4] we are at a loss to explain respondent's position. Respondent cannot, of course, prevail in this Court on the basis of a position clearly incompatible with his published regulations.

But even aside from the regulations, respondent's position in the instant case and as outlined in Rev. Rul. 74–9, 1974–1 C.B. 241,[5] is in error. In ordinary bankruptcy proceedings,[6] the debtor is adjudicated a bankrupt upon the filing of a

---

[3] At least with respect to chapter XII proceedings, the position of the Service is set forth in Rev. Rul. 74–9, 1974–1 C.B. 241. See also Rev. Rul. 68–48, 1968–1 C.B. 301; Rev. Rul. 66–266, 1966–2 C.B. 356.

[4] See Plumb, "The Tax Recommendations of the Commission on Bankruptcy— Income Tax Liabilities of the Estate and the Debtor," 72 Mich. L. Rev. 935, 955, 956 (1974), a carefully researched and well-reasoned article providing a helpful road map to some of the material we confront herein.

[5] Respondent made no attempt, either in the present case or in Rev. Rul. 74–9, *supra,* to reconcile his contentions with sec. 1.641(b)–2(b) of the regulations. See also sec. 1.6012–3(c), Income Tax Regs., which is consistent with sec. 1.641(b)–2(b) of the regulations, but again appears inconsistent with respondent's position herein.

[6] Bankruptcy Act, chs. I–VII, secs. 1–72, 11 U.S.C. secs. 1–112.

voluntary petition. Bankruptcy Act, sec. 18(f), 11 U.S.C. sec. 41(f). Section 70 of the Act, 11 U.S.C. sec. 110, provides that the trustee of the estate of the bankrupt is vested by operation of law with the title to the bankrupt's assets. The bankrupt estate is then administered for purposes of liquidation and distribution of the assets to the creditors.

By contrast, both the chapter XI[7] and chapter XII[8] proceedings seek an arrangement with creditors which will result in the ultimate financial rehabilitation of the debtor. See *Nicholas v. United States*, 384 U.S. 678 (1966). Each chapter's proceedings provide a formal mechanism through which the debtor can formulate a satisfactory arrangement to repay his creditors and avoid being adjudicated a bankrupt. While an adjudication of bankruptcy may be entered during the proceedings under chapters XI and XII, the bankrupt estate will thenceforth be administered under ordinary bankruptcy proceedings. Bankruptcy Rule 122, Bankruptcy Act, secs. 378, 381, 483, and 486, 11 U.S.C. secs. 778, 781, 883, and 886.

Under both chapters XI and XII the debtor remains in possession unless the court decides to appoint a trustee or receiver upon the application of a party in interest.[9] Unless there is some reason for the appointment of a receiver or trustee the statute and rules contemplate continued possession by the debtor. See Bankruptcy rules 11–18(b) and 12–17(b).

In our view, the statutory scheme under chapters XI and XII is meant to aid the individual debtor in reaching a

---

[7] Ch. XI is designed to arrive at a plan pursuant to which the debtor can provide for the settlement, satisfaction, or extension of the time of payment of his unsecured debts. A ch. XI arrangement may not deal with the rights of secured creditors or stockholders.

[8] Ch. XII arrangements have as their primary purpose the modification or alteration of the rights of creditors holding debts secured by real property or chattel real owned by the debtor. A ch. XII arrangement may also deal with unsecured debts. Unlike ch. XI, a corporation cannot be a debtor under ch. XII. Persons filing under ch. XI or XII are referred to as "debtors" rather than "bankrupts."

[9] Ch. XI provides that "The court may, upon the application of any party in interest, appoint, *if necessary*, a receiver of the property of the debtor, or, if a trustee in bankruptcy has previously been appointed, shall continue such trustee in possession." (Emphasis added.) Bankruptcy Act, sec. 332; 11 U.S.C. sec. 732.

Ch. XII provides similarly: "the court may, upon the application of any party in interest, appoint a trustee of the property of the debtor." Bankruptcy Act, sec. 432, 11 U.S.C. sec. 832. See 9 Collier, Bankruptcy, par. 5.02 (14th ed. 1976 rev.).

satisfactory agreement to repay his creditors, and the mere filing under those provisions does not create an entity separate and apart from the debtor. Nor can we concur in respondent's alternative contention that a change in shareholders took place upon the appointment of a receiver for M. W. Hull under chapter XI.

The appointment of a receiver does not create an entity apart from the debtor. The receiver is in effect a custodian, and he does not take title to the debtor's assets.[10] The appointment of a receiver under chapter XI is not designed to transfer assets to a new entity for disposal, but rather to assist the debtor in managing these assets so as to return the debtor to a financially sound condition.[11]

It has been previously held that no separate taxable entity was created by the filing of a petition under chapter XI and the subsequent appointment of a receiver.[12] In *Stoller v. United States*, 162 Ct.Cl. 839, 320 F.2d 340 (1963), the taxpayer filed a petition seeking an arrangement under chapter XI, and shortly thereafter a receiver was appointed to manage the taxpayer's business. The Government contended that the taxpayer's taxable year ended with the appointment of the receiver. The court held that while such events as the death of an individual taxpayer or the dissolution of a corporation may create a taxable period of less than 1 year, the appointment of a receiver does not. The court emphasized that the taxable year of the individual continues and that no separate taxable entity is created by the arrangement.

*In Re Lister*, 177 F.Supp. 372 (E.D. Va. 1959), also stands for the proposition that no separate taxable entity is created by the chapter XI proceedings and the appointment of a receiver. In that case, the receiver was managing a partnership and accordingly filed a U.S. Partnership Return of Income, Form 1065. The Government claimed that the income was that of a

---

[10] Even in ordinary bankruptcy proceedings, a receiver is generally no more than a custodian. Bankruptcy rule 201(g) provides in part: "A receiver is a mere custodian unless, upon proper cause shown, his duties are enlarged or otherwise specified by order of court."

[11] Although a receiver was appointed in the ch. XI proceeding, the Hulls continued to attend shareholder meetings and voted the CHM stock. Legal title to the CHM stock was not transferred to the receiver until after the years in issue.

[12] The similarity of arrangements proposed under chs. XI and XII would seem to require the same conclusion in both instances.

bankrupt partnership estate and should be reported on a Government fiduciary return. The court rejected the Government's argument noting:

Clearly the return is properly filed on form 1065 as, for this purpose, the partnership continues to exist. Certainly it is true that two taxable entities are not created under a Chapter XI proceeding, where before only one had existed. * * *

See also *Kanna v. United States,* an unreported case (D. Ore. 1975, 35 AFTR 2d 75-1482, 75-1 USTC par. 9450); *In re Kepp Electric & Manufacturing Co.,* 98 F.Supp. 51 (D. Minn. 1951).

This Court has likewise taken the view that the appointment of a receiver does not create a separate taxable entity. In *Heasley v. Commissioner,* 45 T.C. 448, 461 (1966), we held that a taxpayer was able to file a joint income tax return despite the fact his property was in receivership. We noted there:

Respondent points to nothing to justify the conclusion that because a receiver has been appointed for all the property of an individual, that individual is placed under a legal disability to make a return. The receiver, if he makes a return, makes it not as a ·fiduciary but makes it for the individual in whose "place" he stands.[13] * * *

The language of the Bankruptcy Act itself further supports the view that neither the filing of chapter petitions nor the appointment of a receiver creates a separate and distinct entity. Both chapters XI and XII contain the following identical provision:

Any provision in this chapter to the contrary notwithstanding, all taxes which may be found to be owing to the United States or any State from a debtor within one year from the date of the filing of a petition under this chapter, and have not been assessed prior to the date of the confirmation of an arrangement under this chapter, and all taxes which may become owing to the United States or any State from a receiver or trustee of a debtor or from a debtor in possession, *shall be assessed against, may be collected from,*

---

[13] Furthermore, in deciding who is a shareholder for subch. S purposes, we look to the beneficial ownership of the stock. *Kean v. Commissioner,* 469 F.2d 1183 (9th Cir. 1972), affg. in part 51 T.C. 337 (1968); *Pacific Coast Music Jobbers, Inc. v. Commissioner,* 55 T.C. 866 (1971), affd. 457 F.2d 1165 (5th Cir. 1972); *Hoffman v. Commissioner,* 47 T.C. 218 (1966). Even when a receiver is appointed in a ch. XI proceeding, the shares are transferred to the receiver only for the purpose of proceeding with the proposed arrangement and assisting the debtor. The transfer does not change the beneficial ownership of the stock. Beneficial ownership remains with the debtor subject to the payments of his debts.

*and shall be paid by the debtor* or the corporation organized or made use of for effectuating an arrangement under this chapter: Provided, however, That the United States or any State may in writing accept the provisions of any arrangement dealing with the assumption, settlement, or payment of any such tax. [Bankruptcy Act, secs. 397 and 523, 11 U.S.C. secs. 797 and 923. Emphasis added.]

In providing that the taxes *shall* be assessed against and paid by the debtor, the statute views the debtor himself as the actual taxpayer even though a receiver or trustee may have the responsibility for filing returns and temporarily managing the property. See *Stoller v. United States, supra; In Re Lister, supra;* Plumb, "The Tax Recommendations of the Commission on the Bankruptcy Laws—Income Tax Liabilities of the Estate and the Debtor," 72 Mich. L. Rev. 935, 959, 960 (1974).

Respondent nevertheless argues that even where the debtor remains in possession, the powers and responsibilities given to the debtor under the chapter proceedings create a new entity apart from the debtor himself. We find this argument unpersuasive. Merely because the debtor's actions are circumscribed or he accedes to new powers does not create separate entities. Furthermore, respondent's overly technical view of the nature of chapter proceedings is in direct conflict with the rehabilitation objectives of chapters XI and XII and with the underlying purposes of subchapter S.

Subchapter S was enacted by Congress in order to allow small businesses to choose the form of organization desired without having to take into account major differences in tax consequences. Under respondent's view, the financial difficulties of a single shareholder, even if unrelated to the business, could automatically cause termination of the subchapter S election, creating new financial and business hardships for the remaining shareholders. In addition, this course would subject all subchapter S elections to greater uncertainty. The provisions of subchapter S should be liberally construed in order to implement the congressional intent of assistance to small businesses. See S. Rept. No. 1983, 85th Cong., 2d Sess. (1958), 1958–3 C.B. 922, 1008. We do not believe that the filing

of a chapter XI or XII petition is the occasion for creating a new pitfall in the subchapter S area.

*Decision will be entered under Rule 155.*