In re Henry J. WEISSER, Debtor.

In re Herman M. WEISSER, Debtor.

Bankruptcy Nos. 70–248–Bk–J,
70–249–Bk–J.

United States District Court,
M. D. Florida,
Jacksonville Division.

Sept. 10, 1979.

Joseph M. Persinger, Dept. of Justice, Washington, D. C., Curtis Fallgatter, Asst. U. S. Atty., Jacksonville, Fla., for Government.

McCarthy Crenshaw, James L. Nipper, A. B. Blackburn, Jr., Jacksonville, Fla., for debtors.

## OPINION

CHARLES R. SCOTT, Senior District Judge.

This is an appeal from the order of the bankruptcy judge, the Honorable George L.

Proctor, filed February 28, 1977, overruling the debtors' objections to the claims of the United States for additional taxes, penalties, and interest for the calendar years 1970, 1971, and 1972. Although this appeal involves two separate cases, since the cases are closely aligned, raise the same issues, and were treated as consolidated in the trial before, and the order of, the bankruptcy judge, the Court will consider the cases consolidated for the purposes of this review.

### Facts

The facts, to which a stipulation has been entered, are not in dispute; only the legal conclusions to be drawn from the facts are at issue here.

On July 10, 1970, appellants-debtors, (hereinafter 'petitioners'), Henry J. Weisser, Case No. 70–248–Bk–J, and Herman M. Weisser, Case No. 70–249–Bk–J, filed petitions for arrangement under Chapter XI of the Bankruptcy Act. 11 U.S.C. § 701 et seq. Included in their schedules of assets as required by 11 U.S.C. § 724, Rule 11–11, Chapter XI, Rules of Bankruptcy, was the stock held by each in the Daytona Motel Corporation. For the several years prior to the filing, and during the pendency, of the petitions, Daytona Motel Corporation was operated as a small business corporation (a Subchapter S corporation) under 26 U.S.C. § 1371 et seq. (hereinafter the 'Code'); all six stockholders having made a valid election under § 1372(a) of the Code for it to be so treated.

Beginning on March 23, 1974, and upon various dates thereafter, the United States filed claims for taxes, penalties, and interest in each of the cases. All but two of the claims have been disposed of. Claim No. 14 against Henry Weisser and claim No. 16 against Herman Weisser were contested below and are the subject of this appeal. These claims arise out of an audit conducted by the Internal Revenue Service (hereinafter the 'IRS') during 1970 which resulted in the assessment of additional income tax against each petitioner. The reason for the additional assessments was the disallowance of certain operating loss deductions of Day-

tona Motel Corporation for the year 1970 which were passed through to the individual tax returns filed by each petitioner. The disallowance of the operating loss deductions was based on the determination by the IRS that the Subchapter S status of the corporation was terminated in the calendar year 1970 when petitioners filed their petitions under Chapter XI of the Bankruptcy Act. This was the contention of the IRS despite its having issued a "no change report" in 1974 accepting the corporation's return (1120–S) "as filed".

In their objections, petitioners raised both substantive and procedural deficiencies in the manner in which the IRS made the assessments and claims. On November 9, 1976, the case came on to be heard before the bankruptcy judge who overruled the objections and held that the claims were valid.

### Issues Presented

Petitioners appeal the order of the bankruptcy judge, raising essentially the same issues as were argued below. They contend first that the bankruptcy judge erred in holding that the filing of a Chapter XI proceeding creates an estate in bankruptcy which terminates a Subchapter S election. Secondly, petitioners assert that the determination of the bankruptcy judge that the claims of the United States were timely filed was incorrect. Because the Court's resolution of the first issue is in favor of the petitioners, the second issue need not be addressed.

### Law

A Subchapter S corporation is a creation of tax law. The principal advantage of the Subchapter S classification is that the profits and losses of the corporation are passed through to the shareholders. Code § 1373. By eliminating the income tax at the corporate level, not only are the shareholders free of the double taxation usually incident to the corporate structure, but also are granted tax benefits with regard to the corporation's operating losses and certain other deductions. Code § 1374.

To qualify for Subchapter S status, the corporation and its shareholders must satisfy a number of strict statutory requirements. The corporation must be a domestic corporation which is not a member of an affiliated group and which does not

(1) have more than ten shareholders (now 15, Public Law 94–455, October 4, 1976);

(2) have as a shareholder a person (other than an estate) who is not an individual;

(3) have a non-resident alien as a shareholder; and

(4) have more than one class of stock. Code § 1374(a).

To have the corporation treated as a Subchapter S corporation for tax purposes, all persons who are shareholders must make an election. Code § 1372(a). This election may be terminated by a consent of the shareholders, Code § 1371(e)(2); by the introduction of a shareholder who does not consent to the election, Code § 1372(e)(1); or by the failure of the corporation at any time during the taxable year to satisfy the requirements of § 1371(a), Code § 1372(e)(3). Generally, a termination of the Subchapter S election at any time during the taxable year is effective for the entire taxable year. Code § 1372.

The intent of Congress in carving out the Subchapter S exception to the corporate tax system was to allow the shareholders of small, closely held corporations, which are economically aligned with proprietorships and partnerships, to operate their businesses as corporate entities and still be taxed similarly to partnerships. H.R. 775, S.R. 1983, Conference R. 2632, P.L. 85–866, 85th Cong., 2d Sess., 3 U.S.Code Cong. and Admin.News. pp. 4791, 4876–4878 (1958). To limit the law's application to only those corporations intended to be covered, and at the same time prevent undue administrative burdens from being placed on the government, the strict requirements of § 1371 were attached.

Of importance to this case is the application of § 1371(a)(2) which limits the type of shareholder a Subchapter S corporation may have. The regulations promulgated by the Secretary of the Treasury (hereinafter the 'Secretary') expound somewhat on this requirement. 26 C.F.R. § 1.1371–1(e) (1978) states:

A corporation in which any shareholder is a corporation, trust, or partnership does not qualify as a small business corporation. The word "trust" as used in this paragraph includes all trusts subject to the provisions of subchapter D, F, H or J (including subpart E thereof), chapter 1 of the Code and voting trusts.

26 C.F.R. § 1.1371–1(d) (1978) addresses the necessity that the Subchapter S corporation have no more than ten shareholders. There it is stated:

Ordinarily, the persons who would have to include in gross income dividends distributed with respect to the stock of the corporation are considered to be the shareholders of the corporation. . . . Persons for whom a stock (sic) in a corporation is held by a nominee, agent, guardian, or custodian will generally be considered shareholders of the corporation.

In determining who actually holds the stock and whether the holder of the stock is in reality the shareholder under § 1371(a), the courts have taken various tacks. In *Fulk & Needham, Inc. v. United States*, 411 F.2d 1403 (4th Cir. 1969), the taxpayer contended that, although a trust actually held the stock, because the economic realities placed the tax burden on him, he should be considered the true shareholder under § 1371(a). The court, however, rejected the argument and held that, by a literal reading of § 1371(a), a trust which holds legal title to the stock is the real shareholder.

In *Lafayette Distributors, Inc. v. United States*, 397 F.Supp. 719 (W.D.La.1975) the court looked past the existence of a voting trust and, applying a beneficial ownership test, held that since the income of the corporation would be taxed to the shareholder rather than the trustee of the voting trust, the voting trust was not a shareholder of the corporation, despite its owning legal title to the stock. *See also, A & N Furniture & Appliance Co. v. United States*, 271 F.Supp. 40, 42 (S.D.Ohio 1967).

The beneficial ownership test was rejected by the court in *W & W Fertilizer Corp. v. United States*, 527 F.2d 621 (Ct.Cl.1975). There the court found that whether the entity holding the stock was recognized as a taxpayer by the code was significant to the determination of who the shareholder was. In rejecting the taxpayer's theory that he, as an individual, was the one who paid the tax on the corporation's dividends and, thus, was the real party in interest, the court reasoned that, although the code may eliminate a trust's obligation to pay taxes, since the trust remained a taxable entity, it, rather than the individual, was the shareholder under § 1371(a). The court stated "we believe section 1371(a) addresses only entities recognized as taxpayers by the Code." 527 F.2d at 627.

This "taxable entity" test reconciles the apparent conflict between the *Lafayette* and *Fulk* decisions. Only in those cases where the entity holding the stock is not required by the code to file tax returns, is that entity not considered a taxpayer for § 1371(a) purposes. If the entity holding the stock is required to file a tax return, then that entity would be a shareholder for purposes of determining the corporation's Subchapter S eligibility. Thus, the question in the present case would seem to be whether petitioners as debtors in possession are treated by the code as taxable entities apart and distinct from the petitioners as individuals.

Code § 641 imposes a tax on the income of estates and trusts. 26 C.F.R. § 1.641(b)–2(b), however, provides that:

> The estate of an infant, incompetent, or other person under a disability, or, in general, *of an individual or corporation in receivership* or a corporation in bankruptcy is not a taxable entity separate from the person for whom the fiduciary is acting, in that respect differing from the estate of a deceased person or of a trust. (Emphasis added)

The regulations providing for the procedure and administration of the taxing system reinforce the provisions of § 1.641(b)–2(b) by requiring that:

> A receiver, trustee in dissolution, trustee in bankruptcy, or assignee, who, by order of the court of competent jurisdiction, by operation of law or otherwise, has possession of or holds title to all or substantially all the property or business of a corporation, shall make the return of income for such corporation in the same manner and form as corporations are required to make such returns. Such returns shall be filed whether or not the receiver, trustee, or assignee is operating the property or business of the corporation.

26 C.F.R. § 1.6012–3(b)(4) (1978).

Subsection (5) speaks of individuals in receivership. It states:

> A receiver who stands in the place of an individual must make the return of income required in respect of such individual. A receiver of only part of the property of an individual need not file a return, and the individual must make his own return.

26 C.F.R. § 1.6012–3(b)(5) (1978).

Citing these sections, the Court of Appeals for the Ninth Circuit has held that "the estate of an individual in bankruptcy is not a taxable entity separate from the person for whom the fiduciary is acting . . . and the bankrupt must file his own form 1040 tax return." *In re Dolard*, 519 F.2d 282, 285 (9th Cir. 1975). Additionally, in *Stoller v. United States*, 320 F.2d 340, 342, 162 Ct.Cl. 839 (1963) it was held that no separate taxable entity was created by a petition seeking an arrangement under Chapter XI of the Bankruptcy Act, even when a receiver had been appointed. *See also, In re Lister* 177 F.Supp. 372 (E.D.Va. 1959).

In support of its decision in *Stoller*, the court noted that Section 397 of Chapter XI, 11 U.S.C. § 797, provides that:

> [A]ll taxes which may be found to be owing to the United States . . . from a debtor . . . and all taxes which may become owing to the United States . . . from a receiver or trustee of a debtor in possession, shall be assessed against, may be collected from, and shall be paid by the debtor for the

corporation organized or made use of for effectuating an arrangement under this chapter.

This requirement that the taxes be assessed against, and paid by, the debtor supports the view that no separate or distinct entity is created by a Chapter XI petition.

The foregoing analysis mirrors that which was applied by the tax court in *C H M Company v. Commissioner of Internal Revenue,* 68 T.C. 31 (1977) appeal dismissed March 31, 1978, where, on the precise issue raised in the instant case, it was held that a shareholder's filing of a petition under Chapter XI did not operate to terminate the corporation's status as an electing corporation under Subchapter S.

Despite the logic of this analysis and the authority in its support, the United States contends that *C H M Company v. Commissioner of Internal Revenue* was wrongly decided. The United States submits that there is no requirement that a new taxable entity be found before there can be a finding that the Subchapter S election has been terminated. The government relies on Rev. Rul. 74–9, 1974–1 Cum.Bull. 241, which reaches a conclusion that would appear to directly contradict the holding and analysis of the *C H M Company* case.

■ Internal Revenue rulings, unlike the Treasury Department regulations, do not have the force of law. They are merely statements of the Commissioner's position on the law as it relates to a precise factual situation. If the "pivotal facts" described in the ruling are altered, the conclusion expressed may be inapplicable to the new set of factual circumstances. Thus, although great weight is given the revenue rulings in considering factual and legal questions, they should not be followed when they are clearly in error or when a different factual situation is presented.

Because it appears that there is a substantial difference between the factual considerations found in Rev.Rul. 74–9 and those facts presented in the case at hand, the Court cannot follow the rule expressed therein.

The facts presented in the revenue ruling were as follows:

A corporation filed an election to be treated as a small business corporation in January 1970. In December 1971, one of the shareholders of the corporation filed an individual voluntary petition in bankruptcy pursuant to the revisions of Chapter XII of the Bankruptcy Act. 11 U.S.C. [§§] 801 through 926. The bankruptcy court did not appoint a trustee of the property of the shareholder and therefore he continued in possession of his property, which included his stock in the small business corporation. *The shareholder was later adjudged bankrupt.* (emphasis added)

Based upon these facts, the Commissioner concluded that an estate in bankruptcy had been created such that the election to be treated as a small business corporation was terminated as of the beginning of the taxable year in which the petition under Chapter XII was filed.

The provisions of Chapter XI and Chapter XII involved here are not substantially different. The critical distinction between the facts in the revenue ruling and the facts now before the Court are that the shareholder in the revenue ruling was ultimately adjudged bankrupt. There are two reasons why this difference renders the ruling inapposite to this case.

■ First, it is not clear exactly what the issue before the Commissioner was. The taxpayer may have conceded that an estate resulting from an adjudication of bankruptcy created an entity that would terminate a Subchapter S election and only questioned the date from which that termination would run. It is settled law that where a petition for arrangement under Chapter XI fails and the debtor is adjudicated a bankrupt, the order of adjudication relates back and the original petition for arrangement becomes the vital date for purposes of determining when the trustee in bankruptcy came into possession of the bankrupt's assets. *United States v. Sampsell,* 193 F.2d 154, 155 (9th Cir. 1951); *In re Setzler,* 73 F.Supp. 314, 316 (S.D.Cal.1947).

Assuming then that the adjudication in bankruptcy of a shareholder of a Subchapter S corporation terminates the election, the revenue ruling may be read to conclude that the termination became effective not in 1972 when the bankrupt was so adjudged, but in 1971 by the relation back of the adjudication to December 1971 when the petition was originally filed. Because petitioners in the present case have not been adjudged bankrupts, this reading of the revenue ruling is not authoritative.

Secondly, and more critical to the case at hand, is the effect an adjudication of bankruptcy of a shareholder has on the corporation's status as an electing small business corporation. There may be valid reasons for finding that the estate of an adjudicated bankrupt shareholder creates an entity that terminates a Subchapter S corporation, despite there being no new taxable entity established, but the validity of that reasoning does not hold true where the shareholder has not been adjudged bankrupt.

■ An adjudication of bankruptcy generally contemplates the conversion of the bankrupt's assets into cash for distribution among the creditors. *Beneficial Finance Company of Oklahoma v. Sidwell,* 382 F.2d 275, 276 (10th Cir. 1976); *Porter v. Household Finance Corporation of Columbus,* 385 F.Supp. 336, 339 (S.D.Ohio 1974). This necessarily requires that the assets of the bankrupt be marshaled for eventual liquidation or distribution to the bankrupt's creditors. Thus, the entity created—the bankruptcy estate—is in practicality a temporary conduit through which the bankrupt's assets flow. The trustee of the estate is the one charged with the obligation of gathering the assets of the bankrupt and reducing them to money. *In re Cabezal Supermarket, Inc.,* 406 F.Supp. 345, 350 (D.N.D.1976).

The stock of an electing Subchapter S corporation which is held by an individual adjudged bankrupt would become part of the estate in bankruptcy. In liquidation, the stock may be sold back to the corporation, to the other shareholders or to third persons. These alternatives may be chosen at varying times during the pendency of the petition. Additionally, the stock may be held during the pendency of the petition so that any dividends declared could be distributed directly to the creditors. Allowing the corporation whose stock was so held to claim Subchapter S status would place an extreme administrative burden on the government in applying the law of small business corporations. In this respect, the estate in bankruptcy can be analogized to a trust holding stock in a Subchapter S corporation. In order to properly administer the tax laws, the government could have the difficult task of following the corporation's earnings not only through the corporation but also through the bankruptcy estate as well. *See W & W Fertilizer Corp. v. United States,* 527 F.2d at 624. Consequently, the Commissioner's termination of the Subchapter S election where one shareholder has been adjudged bankrupt has some reason in logic and purpose.

■ This reasoning, however, does not extend to the situation in which a petition for arrangement has been filed but where the petitioner has not been adjudged bankrupt. A "debtor" under section 306 of Chapter XI, 11 U.S.C. § 706, is a person who has not been adjudged bankrupt. Where an arrangement has not been proposed or for some reason fails, the debtor may *then* be adjudged bankrupt and the proceedings will be converted to one in "straight" bankruptcy. 11 U.S.C. § 776; *In re State Financial Service, Inc.,* 432 F.Supp. 129, 134 (M.D. La.1977) *aff'd* 565 F.2d 161 (5th Cir. 1977). A petition for reorganization, as opposed to one of the "straight" bankruptcy petitions is not a "bankruptcy" in the ordinary sense of the term; a reorganization contemplates an arrangement by which the debtor can continue in business and pay its debts. *In re Public Leasing Corp.,* 488 F.2d 1369, 1373 (10th Cir. 1973). The Chapter XI provisions were enacted as an alternative to "straight" bankruptcy for those businesses or individuals that could be successfully rehabilitated rather than being subjected to economically wasteful liquidation. *Nichols v. United States,* 384 U.S. 678, 687, 86 S.Ct. 1674,

1681, 16 L.Ed.2d 853, 861 (1966); *In re Mammoth Mart, Inc.*, 536 F.2d 950, 953 (1st Cir. 1976); *In re Discon Corp.*, 346 F.2d 839, 841 (S.D.Fla.1971).

 Because of this rehabilitative nature of the Chapter XI proceedings, the stock held by the petitioner is less likely to change hands or to be permanently disposed of. Additionally, since the general rule is that a debtor under Chapter XI will remain in possession, although acting as a trustee, *Wells v. Wilkinson*, 374 F.2d 504, 505 (5th Cir. 1967), the debtor is more likely to have control and direction over the decision to elect Subchapter S status for the corporation than when the stock is held by a trustee in bankruptcy. Thus, the difficulty the government would have in tracing income through the corporation to the shareholder and the burden of correctly determining whether an election has been properly made does not exist to the degree it would in the case of a shareholder adjudged bankrupt. Consequently, the Court cannot extend the conclusion of Rev.Rul. 74–9 to the present case.

Therefore, even if the Court were to reject the "taxable entity" test and follow the teaching of Rev.Rul. 74–9, there would still be no foundation for holding that petitioners' filings under Chapter XI created an entity which cannot be a shareholder of an electing small business corporation.

In further support of the Court's position, note should be taken of the practical effects resulting from the view espoused by the government. An individual suffering from the ravages of financial decline, who sought absolution through a Chapter XI arrangement, could be confronted several years later with the claims by the United States for additional taxes due to the demise of the corporation's tax advantages. Just when the fledgling ward is in the most need of the additional capital provided by the corporation's tax status, the proverbial rug would be pulled from beneath him, dimming, or possibly even extinguishing, the light at the end of the tunnel. In a like manner, the petitioner's fellow shareholders would fall victim to potentially devastating financial

indecision; not knowing whether their reliance on the Subchapter S tax advantages was appropriate. Neither Chapter XI of the Bankruptcy Act, nor Subchapter S of the Internal Revenue Code, should be read to produce such results.

With all due regard to the bankruptcy judge, the Court must conclude that a shareholder's filing of a petition for arrangement under Chapter XI of the Bankruptcy Act does not operate to terminate the election made under § 1371(a) to have the corporation taxed under Subchapter S. Accordingly, pursuant to Rule 810 of the Rules of Bankruptcy, the order of the bankruptcy judge will be reversed and the case remanded for further consideration.