In the Matter of CABEZAL SUPERMARKET, INC., et al., Bankrupt.

**Stephen G. GRIMSTAD, Trustee, Plaintiff,**

v.

**RED OWL STORES and Jose Gerard Cabezal, Defendants.**

No. B3–75–83.

United States District Court, D. North Dakota, Southeastern Division.

Jan. 23, 1976.

346

Jon M. Arntson, West Fargo, N. D., for plaintiff.

Gilbert R. Neset, Fargo, N. D., for Cabezal.

## MEMORANDUM ON REVIEW OF ORDER OF BANKRUPTCY JUDGE

BENSON, Chief Judge.

### Preliminary Facts

Jose Gerard Cabezal, Defendant-Appellant, appeals from an order of the bankruptcy court entered in the above entitled action August 22, 1975. In a complaint filed August 14, 1975, with the bankruptcy court, the trustee requested authority to sell certain furniture, fixtures and equipment in his possession by virtue of his status as trustee, free and clear of all liens. The trustee also asked that any present liens be transferred from the assets to the proceeds of the sale. The appellant claimed personal ownership of the furniture, fixtures and equipment in question and objected to any sale. In a pleading entitled "Motion, Separate Answer, Counterclaim & Cross Claim of Defendant", the appellant contended *inter alia* that he was entitled to a plenary hearing on the issue of ownership prior to any sale of the property. Pursuant to the trustee's complaint, a hearing was held August 21, 1975.[1] The Court ordered:

"1. That the Trustee be, and he hereby is, authorized to sell the assets of the bankrupt as set out in petitioner's Exhibit 1, free and clear of all liens and encumbrances, subject, however, to costs and expenses of sale and costs and expenses of administration.

2. That claims of ownership and claims of liens on said property be transferred to the proceeds of said sale and, the extent of ownership and liens and the priority of liens to the proceeds be determined by this Court at a later hearing.

3. That any sale of said property must be approved by this Court.

4. Prior to the sale of property, the Trustee shall inform Jose Gerhard Cabezal of the proposed sale amount.

5. In the event an interested party in this estate finds a cash buyer for said property or a sum in excess of the Trustee's proposed sale figure, a hearing shall be set to consider such proposals with three days' notice to all interested parties.

6. The Trustee's motion to sever the counterclaim and crossclaims of the defendant, Jose Gerhard Cabezal, made in open Court, is taken under advisement.

7. The Court reserves the right to make further findings in this matter."

The issues presented on appeal by the appellant are:

"May the Referee in bankruptcy order a sale of property which is claimed to be personally owned without the consent of the owner and with no determination of actual ownership?

May such personally owned property be impressed with a proportionate share of the costs, expenses and fees of the Trustee and his attorney?

---

1. The bankruptcy court made these findings after the August 21, 1975, hearing.

"1. The Trustee has made an investigation into the assets and liabilities of the bankrupt.

2. That a list of assets which the Trustee is requesting authority to sell is set out in petitioner's Exhibit 1.

3. That an independent appraisal of the fixtures and equipment listed in petitioner's Exhibit 1 has been filed with the Court.

4. That the sale of said fixtures and equipment by the Trustee free and clear of liens and claims of ownership is in the best interest of the creditors of this estate.

5. That the interest of lien holders and claims of ownership will be protected."

Does the Bankruptcy Court have jurisdiction of the subject matter of the action?

Was there insufficiency of service of process and of legal process?

Is the Defendant appellant entitled as a matter of right to a plenary hearing with opportunity to discovery, cross examine and prepare with due notice to meet the complaint of Plaintiff Trustee?"

## Standard of Review

Rule 810 of the Rules of Bankruptcy Procedure sets out the standard of review to be followed by the district court.

"Upon an appeal the district court may affirm, modify, or reverse, or remand with instructions for further proceedings. . The court shall accept the referee's findings of fact unless they are clearly erroneous, and shall give due regard to the opportunity of the referee to judge the credibility of the witnesses."

■ The rule is a broad grant of power which allows the reviewing court to consider any issue presented by the record even though it was not discussed by or before a referee. 2A Collier on Bankruptcy ¶ 39.28. The only limitation imposed is that the district court must accept the referee's findings of fact unless clearly erroneous.[2]

## Subject Matter Jurisdiction

The initial question is whether the bankruptcy court had jurisdiction over the furniture, fixtures and equipment when it made its findings and issued its order of August 22, 1975, permitting sale of that property. The basic rule is set out in 2 Collier on Bankruptcy ¶ 23.04 at pages 453 and 455.

"Generally speaking, where the controversy is one concerning property in the actual or constructive possession of the bankruptcy court, that court may adjudicate summarily all rights and claims pertaining thereto. Where the controversy is one involving property in actual or constructive possession of a third person asserting a *bona fide* adverse claim, the bankruptcy court has no jurisdiction to determine summarily that person's claim upon petition by the receiver or trustee, unless by that person's consent." See 11 U.S.C. § 46. *See also In re Rehkopf Mattress Sales, Inc.,* 479 F.2d 67 (5th Cir. 1973); *Willyerd v. Buildex Co.,* 463 F.2d 996 (6th Cir. 1972).

■ The summary jurisdiction of a bankruptcy court is exclusive and once a bankruptcy court has acquired summary jurisdiction over property, that property is withdrawn from the jurisdiction of all other courts. *In re Rehkopf Mattress Sales, Inc.,* 479 F.2d 67 (5th Cir. 1973); *Hollywood Nat. Bank v. Bumb,* 409 F.2d 23 (9th Cir. 1969). And where property is within the actual or constructive possession of the bankrupt, a court of bankruptcy can determine, among other things, controversies involving adverse claims of title. *In re Fontainebleau Hotel Corp.,* 508 F.2d 1056, *rehearing denied,* 512 F.2d 1406 (5th Cir. 1975); *South Central Bell Tel. Co. v. Simon,* 508 F.2d 1056, *rehearing denied,* 512 F.2d 1406 (5th Cir. 1975); *Bayview Estates, Inc. v. Bayview Estates Mobile Homeowners Ass'n,* 508 F.2d 405 (6th Cir. 1974); *Sherr v. Sierra Trading Corp.,* 492 F.2d 971 (10th Cir. 1974); *See generally* 2 Collier on Bankruptcy ¶ 23.04 at 462.

■ The record on appeal establishes that the trustee did obtain actual possession of the property following the filing of the bankruptcy petition.[3]

A voluntary petition of bankruptcy was filed on behalf of Cabezal Super-

---

2. The rule is limited to the bankruptcy judge's findings of fact. The district judge is still free to make independent conclusions of law. 13 Collier on Bankruptcy ¶ 810.05.

3. Property is in the actual possession of the bankruptcy court when an officer of the court is in actual physical possession of it, whether such officer is a trustee, receiver, or other judicial representative. 2 Collier on Bankruptcy, ¶ 23.05[2], p. 474.

market, Inc., on May 21, 1975. The bankrupt was operating as a retail grocery store under the name of "J's Red Owl". On May 22, 1975, a receiver was appointed and took immediate control of the store and its contents. An inventory of those contents, which included the disputed furniture, fixtures and equipment, was made that same day by the trustee with the aid of the appellant Cabezal, who was president of the bankrupt.[4] The receiver entered into an operating arrangement with representatives of Red Owl Stores, Inc., on June 16, 1975. At all times, Red Owl Stores, Inc., maintained they were a secured creditor of the bankrupt and had a valid security interest in all fixtures and all inventory of goods and merchandise of the bankrupt including proceeds. The claim was based on a security agreement between Cabezal Supermarket, Inc. and Red Owl Stores, Inc., made July 29, 1974, whereby Red Owl loaned Cabezal Supermarket, Inc., $50,000 which was secured partly by the furniture, fixtures and equipment in question.[5] The agreement is listed on the bankrupt's petition for bankruptcy.

The testimony from the First Meeting of Creditors also established that an initial $50,000 loan was taken by Cabezal personally from the Small Business Administration and was used to purchase property from Fairway Foods. The corporation, however, made the payments on the loan. Eventually this loan was paid off with the proceeds of a new loan from Red Owl Stores, Inc. All payments made on the loan from Red Owl were made by the corporation.[6]

In addition, the appellant has submitted himself to the jurisdiction of the bankruptcy court by filing claims against the bankrupt.

"In all cases where the summary power of the bankruptcy court is disputed, a preliminary inquiry is necessary to ascertain whether or not the requisites for summary jurisdiction, hereinbefore discussed, are present, and so to determine whether or not the court may proceed further. *But no such inquiry is necessary where the adverse claimant has himself invoked the jurisdiction of the court by filing a claim against the bankrupt. In such case he has consented to the summary jurisdiction of the court to adjudicate his claim and the trustee's defenses thereto.*" 2 Collier on Bankruptcy ¶ 23.07[1] page 520–521. (emphasis added).

The bankruptcy court had actual possession of the property and thus had subject matter jurisdiction.

### Power of Bankruptcy Court to Sell Property

Section 70(f) of the Bankruptcy Act (11 U.S.C. § 110(f)) authorizes the sale of the bankrupt's assets.

"The court shall appoint a competent and disinterested appraiser and upon cause shown may appoint additional appraisers, who shall appraise all the items of real and personal property belonging to the bankrupt estate and who shall prepare and file with the court their report thereof. Real and personal property shall, when practicable, be sold subject to the approval of the court. It shall not be sold otherwise than subject to the approval of the court for less than 75 per centum of its appraised value. Whenever a sale of real or personal property of a bankrupt is made by or through an auctioneer employed by the court, receiver, or trustee, the auctioneer must be a duly licensed or authorized auctioneer in the place where the sale is to be conducted."

---

4. The list was introduced into evidence at the August 21, 1975, hearing as Petitioner's Exhibit # 1. The same list was attached to the trustee's Complaint to Sell Free and Clear.

5. The appellant does not contest the existence of this security interest, instead challenges its validity. This argument is properly made only to the bankruptcy court.

6. The testimony from the August 21, 1975, hearing established that the corporation depreciated the furniture and fixtures on its corporate income tax return for 1973.

■ A general duty of a trustee or receiver is to reduce the bankrupt's estate to money. *See* Section 47A of the Bankruptcy Act (11 U.S.C. § 75a).[7]

"The power of bankruptcy courts to sell the bankrupt's assets extends also to encumbered property. . . . [I]t is . . . well settled that bankruptcy courts may, if administration interests so require, sell property of bankrupt estates free of all claims, liens and encumbrances, including tax liens. The court does not require consent on the part of the lienholder and may sell the property despite his objection thereto." 4A Collier on Bankruptcy ¶ 70.97, pp. 1131–1135.

■ The Court concludes the bankruptcy court had possession of the property, and it therefore had authority to order the sale of that property free and clear of claims and liens.

As indicated by Rule 606 of the Bankruptcy Rules, in order to sell property free of any liens or other encumbrances, the trustee must file a complaint pursuant to Part VII of the rules, which was done in the present case. An answer was filed objecting to the sale. The Court concludes the procedural requirements of Part VII were met.

The appellant's claim to the property has been transferred to the proceeds of the sale.

### Insufficiency of Process

Attached to the Trustee's complaint was a list of the property, which list was designated Exhibit A. The complaint and the exhibit were mailed to the appellant the same day, but were mailed separately. The appellant argues this to be insufficient service, despite the fact that he received the complaint and the exhibit prior to the hearing.

■ Appellant does not allege that the separate mailing either prejudiced or confused him in preparing for the hearing. The modern philosophy of pleadings requires only a generalized summary of the case that affords fair notice. In the instant case, the Court finds that fair notice was received and service was

---

**7.** Rule 606(b) generally governs the conduct of a sale.

"Rule 606. Appraisal and Sale of Property; Compensation and Eligibility of Appraisers and Auctioneers

(a) Appraiser: Appointment and Duties. The court shall appoint one or more competent and disinterested appraisers, unless it determines that such appointment is unnecessary. Unless the court directs otherwise, the appraiser or appraisers shall appraise all the property of the estate and shall prepare and file a report of the appraisal with the court.

(b) Conduct of Sale.

(1) *Court Approval.* The property of the estate shall be sold subject to the approval of the court unless the court orders otherwise.

(2) *Public or Private Sale.* All sales shall be by public auction, unless otherwise ordered by the court on application to the court and for good cause shown. Unless it is impracticable, there shall be filed with the court on completion of a sale an itemized statement of the property sold, the name of each purchaser, and the price received for each item or lot or for the property as a whole if sold in bulk. If the property is sold by an auctioneer, he shall file the statement and furnish a copy to the trustee or receiver; otherwise the trustee or receiver shall file the statement.

(3) *Sale Free of Lien or Other Interest.* A proceeding to sell property free of a lien, or of any other interest for which the holder can be compelled to take a money satisfaction, is governed by the rules in Part VII.

(4) *Execution of Instruments.* After a sale in accordance with this subdivision the trustee or receiver, as the case may be, shall execute such instruments as may be necessary or ordered by the court to effectuate the transfer to the purchaser.

(c) Compensation and Eligibility of Auctioneers and Appraisers. No auctioneer shall be employed or appraiser appointed except upon an order of the court fixing the amount or rate of compensation. No officer or employee of the Judicial Branch of the United States or the United States Department of Justice shall be eligible to act as an auctioneer or appraiser. No residence or licensing requirement shall apply to an auctioneer employed or appraiser appointed under this rule."

The rule makes it necessary for the bankruptcy court to approve of any sale. The attack in this appeal is not the sale procedure but whether or not the bankruptcy court could order a sale prior to a determination of ownership.

sufficient within the requirements of the Rules.

 The question whether "personally owned property [may] be impressed with a proportionate share of the costs, expenses and fees of the Trustee and his attorney" is premature, since the issue of title has not been determined and is still properly before the bankruptcy court.

The findings of fact and conclusions of law of the bankruptcy judge are affirmed.