**In the Matter of FINANCIAL CORPORATION, Bankrupt.**

**Albert L. WALTERS, Appellant,**

v.

**OCCIDENTAL PETROLEUM CORPORATION, Appellee.**

**No. 79–0544 CV W 4.**

United States District Court, W. D. Missouri, W. D.

Nov. 23, 1979.

Larry E. Sells, Kansas City, Mo., for appellant.

Jack N. Bohm, Kansas City, Mo., for appellee.

**524**

## OPINION AND ORDER

ELMO B. HUNTER, District Judge.

This action is an appeal from a memorandum opinion of the bankruptcy court filed May 7, 1979.[1] In this appeal, appellant seeks review and reversal of that opinion.[2] The bankruptcy court's ruling allowed appellee's claim against the bankrupt Financial Corporation's estate in the amount of $58,356.17. Appellant is a member of a group of creditors of the bankrupt and, as such, objects to the allowance of appellee's claim. The claim was allowed pursuant to Section 63(a)4 of the Bankruptcy Act, 11 U.S.C. § 103.

### I.

In order to clarify the issues for review, it is necessary to rehearse the facts of record.

(1) On June 30, 1975, appellee contacted Financial Corporation through Shorterm International, Inc.—a "money market" brokerage firm—in order to secure a limited duration investment commonly referred to as a "repurchase agreement." Basically, appellee desired to put $10,000,000.00 of idle cash to work until July 7, 1975, and chose the repurchase agreement as the most desirable financial vehicle.

(2) The oral repurchase agreement was entered into on June 30, 1975. The agreement consisted of a transfer of $10,000,000.00 from appellee to Financial Corporation in exchange for United States Treasury Bills with a maturity value of $10,530,000.00 on May 4, 1976. Had this arrangement worked according to plan, Financial Corporation was to have bought back the Treasury Bills on July 7, 1975 for the sum of $10,012,250.00 which would have net appellee a higher rate of return than through other available short term investment devices.

(3) Financial Corporation failed to repurchase the Treasury Bills on July 7, 1975.

(4) On July 10, 1975, Financial Corporation consented to an order of the United States District Court for the Southern District of New York imposing a preliminary injunction and the appointment of a temporary receiver stemming from an action initiated by the Securities and Exchange Commission.

(5) On July 14 and 15, 1975, appellee sold the Treasury Bills in order to attempt to regain control of its liquid assets.

(6) Financial Corporation was adjudicated a bankrupt on August 18, 1975 in Missouri.

(7) Following the adjudication in bankruptcy, appellee filed a claim in the bankruptcy court for alleged losses sustained as a result of the sales of the Treasury Bills. Appellee claimed a loss of $29,509.15 in principal amount. Appellee also claimed a loss of interest for the period of the investment and for the period prior to the sale of the Treasury Bills in the amount of $25,757.36. Further, appellee claimed $3,125.00 as damage resulting from an overdraft at the Chase Manhattan Bank of New York City alleged to have occurred as a direct result of Financial Corporation's failure to repurchase the Treasury Bills. Appellant filed various objections to the claims.

(8) A hearing was held on December 11, 1978 on the issue of the allowability of appellee's claim. The only testimony received was that of Mr. Eldon Miller, former president of Financial Corporation. The bankruptcy court in its ruling of May 7, 1979 held that Financial Corporation had been contractually obligated to appellee to repurchase the Treasury Bills on July 7, 1975, and that the measure of damages for the breach of the agreement was governed

---

1. Honorable Jack C. Jones, presiding.

2. The issues on appeal are as follows:
   (1) Whether it was clearly erroneous for the bankruptcy judge to find that Financial Corporation was contractually obligated to repurchase United States Treasury Bills from appellee?

   (2) Whether it was clearly erroneous for the bankruptcy judge to find that appellee properly mitigated its damages?
   (3) Whether the bankruptcy judge was in error to allow that part of appellee's claim based upon interest?

by the law of contracts.[3] Further, the bankruptcy court held that appellee took "all reasonable and prudent steps" to mitigate its damages stemming from Financial Corporation's breach.

(9) The appellant filed his notice of appeal in this Court pursuant to Bankruptcy Rule 801 on May 17, 1979.

## II.

The first issue presented for review is whether it was an error for the bankruptcy judge to find that Financial Corporation was contractually obligated to repurchase the Treasury Bills from appellee. The appellant argues strongly that the evidence presented to the bankruptcy court indicated that these repurchase agreements create only "options" in the seller to repurchase and not "obligations." If, as appellant contends, repurchase agreements of this type create only an option to repurchase, then appellee would not be allowed its claim against Financial Corporation's estate on grounds of a contractual liability. See, Section 63(a)4 of the Bankruptcy Act, 11 U.S.C. § 103.

■ The bankruptcy judge clearly found as a factual matter that the repurchase agreement in this transaction created an obligation to repurchase.[4] As a court of review, this Court is bound by Bankruptcy

Rule 810 to uphold all factual findings of the bankruptcy judge unless they can be found to be "clearly erroneous." See, Solari Furs v. United States, 436 F.2d 683 (8th Cir. 1971); In re Cabezal Supermarket, Inc., 406 F.Supp. 345 (D.C.N.D.1976); In re Transystems, Inc., 569 F.2d 1364 (5th Cir. 1978). The application of this standard also requires that the reviewing court give due regard to the opportunity of the bankruptcy judge to assess the credibility of the witnesses. Inland Security Company, Inc. v. Estate of Kirshner, 382 F.Supp. 338 (W.D. Mo.1974).

Here, there was only one witness who testified before the bankruptcy judge, Mr. Eldon Miller. Mr. Miller's testimony was not precise on the issue of whether Financial Corporation possessed an option or obligation to repurchase the Treasury Bills on July 7, 1975. In response to direct questions as to the nature of these transactions, he used qualified language.[5] Further, his testimony indicated that the purpose of repurchase agreements of this type was to allow for persons with sums of idle cash to invest for short periods of time. As well, the few items of documentary evidence tend to support the bankruptcy judge's finding.[6]

■ While this particular repurchase agreement was an oral arrangement, the

---

**3.** The bankruptcy court allowed $29,506.17 as actual loss as measured by the difference between the contract price and the resale price of the Treasury Bills. The loss of interest from June 30, 1975 to July 7, 1975 was allowed it seems as an expectancy damage. The loss of alternative use of appellee's investment amount from July 8, 1975 through July 15, 1975 and the $3,125.00 overdraft charge were both allowed apparently as consequential damages.

Insofar as substantive state law of contracts enters into this case, the parties have concluded that this repurchase agreement was formed in New York City and that its validity is subject to the laws of New York State. See Vanston Bondholders Protec. Com. v. Green, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946).

**4.** See pp. 1–2 of the bankruptcy court's Memorandum Order.

**5.** While questions of witness credibility are confined solely to the discretion of the bankruptcy judge, this Court does take note of the

fact that Mr. Miller's responses may well have been colored by the fact that the appellant in this action personally conducted the direct examination at the bankruptcy hearing and was an original noteholder of Financial Corporation who helped to finance Mr. Miller in organizing Financial Corporation.

**6.** The letter of confirmation dated July 14, 1975, from Shorterm International, Inc., to appellee read as follows:

This is to confirm that a review of our records indicates that on June 30, 1975, on a Re-Purchase Agreement you bought from the Financial Corporation—63 Wall Street—New York, N.Y. 10005, $10,530,000 Treasury Bills of May 4, 1976 versus $10,000,000. You have a *right* to return versus payment plus interest on July 7, 1975 to The National Bank of North America A/C Financial Corp. The foregoing occurred as per our instructions as agent. [Emphasis supplied].

bankruptcy judge found that the intent of the parties was not to create a permanent sale with a buy-back option.[7] The record is clear that appellee wanted a two week investment for its $10,000,000.00 and that appellee had no desire to buy Treasury Bills. Furthermore, it appears to this Court that if the nature of a repurchase agreement of this type was to create merely an option to repurchase, then, depending upon market fluctuations, uncertainty would tend to discourage the widespread use of repurchase agreements as safe, short term, high yield investments. As such, this Court concludes that the bankruptcy judge's determination that this repurchase agreement created a contractual obligation was not clearly erroneous. *See, Miller v. Schweickart,* 413 F.Supp. 1062 (S.D.N.Y.1976); *Sun First National Bank of Orlando v. Miller,* 77 F.R.D. 430 (S.D.N.Y.1978); and *United States v. Erickson,* 601 F.2d 296, n. 4 (7th Cir. 1979).[8]

### III.

■ The next question presented to this Court is whether the bankruptcy court's conclusion of law that appellee properly mitigated its damages is in error.[9]

■ Appellant argues that the conclusion was not supported by any evidence in the record. In bankruptcy proceedings, filing of a proof of claim constitutes "prima facie evidence of the validity and amount of the claim." 11 U.S.C. § 93(a); Bankruptcy Rule 301(b); *see also, Matter of Colorado Corp.,* 531 F.2d 463 (10th Cir. 1976). Therefore, it was incumbent upon appellant to successfully overcome the validity and the amount of the damage claims submitted by appellee. Nothing in the record indicates to this Court that appellee's decision to sell the Treasury Bills approximately one week after the breach constituted a failure to mitigate. Appellant's argument that the market price in Treasury Bills rose after the sales and, as such, appellee could have profited by waiting misconceives the mitigation principle. Simply stated, a failure to mitigate will limit the amount of damages recoverable to those that could not reasonably be avoided. See, 5 Corbin Contracts § 1039

---

**7.** Appellant contends that an obligation to repurchase would cause the repurchase agreement to be governed by Article 9 of the Uniform Commercial Code. While this repurchase agreement had many of the attributes of a secured loan, there was nothing in the record to indicate that this transaction was intended to effectuate a security interest. See, § 9–102 and Official Comments thereto; and *Bruce Lincoln-Mercury, Inc. v. Universal C.I.T. Credit Corp.,* 325 F.2d 2 (3rd Cir. 1963). In addition, Mr. Miller testified explicitly that he did not consider repurchase agreements to be secured loans.

**8.** In both *Schweickart* and *Sun,* the respective courts did not specifically hold that money market repurchase agreements created contractual obligations, but strongly indicated that these agreements are not optional in nature. The *Schweickart* court, in describing the trade practices in the repurchase agreement market, noted that the original seller of the bonds had been under the agreement "*forced* to buy [the] bonds back at prices substantially in excess of prevailing market prices." 413 F.Supp. 1062 at 1067.

Appellant also argues that trade practice dictates that appellee's remedies were to call for more Treasury Bills during the period of the repurchase agreement when the market was falling and to liquidate the Treasury Bills in the event of a failure to repurchase. This Court agrees that the record supports appellant's argument as to the existence of these types of remedies, but the record does not support appellant's conclusion that these two remedies are exclusive.

This Court notes that there is some question as to whether the conclusion of the bankruptcy court is a finding of an "ultimate fact" which is a fact based upon legal inferences from operative facts. Ultimate facts have been held to be exempt from review under the clearly erroneous standard. *See, In re Pioch,* 235 F.2d 903 (3rd Cir. 1956); and *In re Mid-Center Redevelopment Corp.,* 383 F.Supp. 954 (D.C.N.J.1974). Nevertheless, it has also been held that if the record reveals a reasonable basis for the findings of the bankruptcy court, the reviewing court can not overturn them. *In re Mid-Center Redevelopment Corp., Id.* Even assuming that the clearly erroneous standard does not apply to a review of this question, this Court concludes that there is a reasonable basis in the record for the bankruptcy court's conclusion.

**9.** In their briefs, both appellant and appellee assumed the applicability of the clearly erroneous standard in reviewing this conclusion of the bankruptcy court. The clearly erroneous standard does not apply to legal conclusions. *See Solari Furs v. United States, supra.*

n. 4 (1964). Appellant's argument would impose upon appellee a requirement to have knowledge of future activity in the financial markets. Clearly, such a requirement would be an unreasonable expectation in the realm of business judgment.[10] This Court finds no error in the bankruptcy court's determination that appellee properly mitigated its damages.

### IV.

The final question raised in this appeal is whether the bankruptcy court was in error in allowing a claim based in part upon interest accrued subsequent to the appointment of a temporary receiver, but prior to the date of filing for bankruptcy. The temporary receiver was appointed on July 10, 1975 and the bankruptcy judge allowed appellee's interest claims through July 15, 1975. This date was well before Financial Corporation's August 18, 1975 bankruptcy filing.

It is well settled that interest accrued prior to filing in bankruptcy is allowable. *Nicholas v. United States,* 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966); *In re Romero,* 523 F.2d 618 (10th Cir. 1976). It is also well established that interest ceases to accrue subsequent to an estate passing into an equity receivership unless there exists sufficient funds in the estate to satisfy all the claims of equal rank

plus interest. *Vanston Bondholders Protec. Com. v. Green,* supra; *United States v. Sullivan,* 254 F.Supp. 254 (D.C.R.I.1966); *see generally,* 39 A.L.R. 457; and 44 A.L.R. 1170.

The record shows that a temporary receiver was appointed on July 10, 1975 in an action prosecuted by the Securities and Exchange Commission in the United States District Court for the Southern District of New York. While the duties of this receiver were relinquished following Financial Corporation's filing for bankruptcy in Missouri, it is clear that Financial Corporation's assets had become subject to a receivership. Therefore, unless it can be demonstrated that Financial Corporation's assets are sufficient to satisfy all claims of equal rank with appellee plus interest, the bankruptcy court was in error to allow a computation of interest beyond July 10, 1975. It is thus necessary for this cause to be remanded to the bankruptcy court for the limited purpose of determining the appropriate damage amount consistent with this opinion.

IT IS SO ORDERED.

---

10. Appellant also argues that appellee could have held the Treasury Bills to maturity and thereby recovered all of its principal investment plus 6.3% in interest yield. This argument is without merit. The record is clear that appellee had no desire to commit its funds until May 4, 1976 with the attendant loss of alternative uses for those funds.